# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Janet Alexander, Plaintiff, v. Patrick O'Neil, Coroner of Will County, Illinois, in his official capacity and in his individual capacity, The Will County Coroner's Office, and Will County, Illinois, a municipal corporation, Defendants. | No. 06 C 6045<br><br>Wayne R. Andersen<br>District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of defendants Patrick O'Neil, the Will County Coroner's Office, and Will County to dismiss Janet Alexander's complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). For the following reasons, the motion to dismiss is granted.

## BACKGROUND

Janet Alexander was appointed by Patrick O'Neil, the elected coroner for Will County, as a deputy coroner of Will County in 2000. In February, 2002, Alexander informed O'Neil about a job offer from the Cook County Medical Examiner's Office (at the time, she was one of only seven board certified death investigators in Illinois); O'Neil promoted her to chief deputy coroner in April, 2002, and allegedly told her she would be Chief Deputy Coroner for as long as he was

the elected coroner and she performed her job satisfactorily.

Alexander's job was to supervise the official duties of the coroner's office, including supervision of the deputy coroners. Will County deputy coroners were instructed to call Alexander, and not O'Neil, with any questions about assigned death investigations. Alexander received public and private praise for her job performance. On May 11, 2005, O'Neil designated Alexander to be his successor coroner pursuant to Illinois law, 55 ILCS § 5/3-3009.

On June 6, 2004, three-year-old Riley Fox was found murdered in Will County. Alexander normally would have handled the death investigation, but was on vacation at the time; O'Neil ordered an autopsy to be performed. Additionally, without the knowledge of Alexander, O'Neil ordered the completion of two separate sexual assault kits. According to Alexander's complaint, completing two separate sexual assault kits is a violation of protocol. In a bizarre series of events, Riley Fox's father was arrested for the murder of his daughter, but was released when DNA testing excluded him as the source of the DNA collected from the autopsy; his civil rights lawsuit against Will County alleging false arrest had already been filed.

In June, 2005, Alexander discovered that the two separate sexual assault kits had been ordered, and questioned O'Neill about this. She then spoke with other state coroners and state investigators, as, she claims, a private citizen, intending to "expose the misconduct in the Riley Fox autopsy." Compl., ¶44. In late 2005, O'Neil allegedly publically berated her and ordered her to stop speaking with or meeting "coroners from other counties and coroners and deputy coroners aligned with other political parties." Compl., ¶46. Alexander continued to investigate the alleged procedural violations and answer questions from investigators. O'Neil fired Alexander on December 27, 2005, citing excessive use of her coroner-supplied cellular telephone.

After being discharged, Alexander found in her Coroner's Office personnel file eight unsigned memoranda dated between July 8, 2005 and December 14, 2005, which she claims were falsely critical of her and had been falsely planted as justification for her firing. None of the memoranda were in her file previously, nor were they in her Will County personnel file. Compl., ¶55.

Alexander filed a seven count complaint, alleging: (I) first amendment retaliation, (II) violation of her right to freedom of association on matters of public concern, (III) deprivation of her property interest, (IV) deprivation of her liberty interest, (V) detrimental reliance, (VI) intentional infliction of emotional distress, and (VII) indemnification. Defendants claim that Alexander's first amendment claims in counts I and II are not actionable because Alexander was a policymaking employee fired on political grounds. They claim that count III should fail because Alexander had no property interest in her job and that count IV should fail because the allegedly stigmatizing information was not publicly disclosed. Defendants also argue that if the motion to dismiss with respect to counts I through IV is granted, the remaining claims should be dismissed without prejudice so that the plaintiff may pursue them in state court. Finally, defendants claim in the alternative that O'Neil has qualified immunity with respect to counts I through IV.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of a complaint and not to decide the merits of the challenged claims. *Weiler v. Household Financial Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). When considering a motion to dismiss, the court must treat all facts alleged

in the complaint as true and should draw all inferences in favor of the plaintiff. *McDonald v. Household International, Inc.*, 425 F.3d 425 (7th Cir. 2005). Dismissal is appropriate when it appears beyond doubt that plaintiff can prove no facts consistent with her claim which would entitle her to relief.

While the First Amendment right to freedom of speech is fundamental, it is not absolute. Even the right to criticize public officials, itself at the heart of First Amendment protection, is subject to restrictions and exceptions. *Wilbur v. Mahan*, 3 F.3d 214 (7th Cir. 1993) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)). Some of those restrictions concern public employees.

Two major lines of cases control the outcome of cases in which a public employee is fired as a result of her speech. The first, the *Elrod-Branti* exception, under which public employees who hold policymaking positions can be fired for political affiliation, see *Elrod v. Burns*, 427 U.S. 347, 368 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980), has been extended by the Seventh Circuit to include political expression that compromises a policymaker's loyalty or reflects a breakdown of the sense of shared political mission between superior and subordinate. *Sakelaris v. Danikolas*, Slip Copy, 2007 WL 917375 (N.D. Ind., Mar. 23, 2007); see also *Warzon v. Drew*, 60 F.3d 1234, 1238 (7th Cir.1995); *Wilbur v. Mahan*, 3 F.3d 214, 218 (7th Cir.1993). The second line of cases, under *Pickering* and *Connick*, establish that a governmental employer cannot punish a public employee for engaging in protected expression on matters of public concern under the First Amendment. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 142 (1983). The First Amendment protection of the employee in commenting upon matters of public concern is balanced against the interest of the

government as employer in promoting the efficiency of the public services it performs through its employees. *Lickiss v. Drexler*, 141 F.3d 1220 (7th Cir. 1998).

Defendants argue that this case falls under the *Elrod-Branti* exception because Alexander was a policymaker. Alexander denies that she was a policymaker, and argues that the *Elrod-Branti* line of cases are patronage cases, in which employees lost jobs because they were not members of the employer's political party. *Wilbur*, 3 F.3d at 217. Alexander further claims that nothing in her complaint indicates that she was fired for political reasons or any other type of political speech. Alexander is correct in that the patronage cases do not hold that an employee surrenders her freedom of speech by becoming a policymaking employee of government. *Wilbur*, 3 F.3d at 217. They do hold, however, that if Alexander were a confidential or policymaking employee, defendants could, consistent with the First Amendment, fire her for advocating positions in conflict with their stated policies. *Warzon*, 60 F.3d at 1239.

Whether an employee is a policymaker is a matter of law to be determined by the court. *Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005). Alexander argues that, because she doesn't specifically allege that she was a policymaker, addressing her official duties would require the court to consider matters outside the pleadings. However, in making the determination, matters of public record not only are properly considered by the court, but fall within the category of common knowledge. *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996). A district court, therefore, may properly look to state statute to determine as a matter of law whether an individual is a policymaker. *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999).

Alexander's duties are defined by Illinois state statute. "Deputy coroners, duly appointed

5

and qualified, may perform any and all of the duties of the coroner in the name of the coroner, and the acts of such deputies shall be held to be acts of the coroner." 55 ILCS § 5/3-3042. Alexander's complaint additionally delineates her specific duties. Alexander states that O'Neil allowed and instructed Alexander to supervise the official duties of the coroner's office, including supervision of the deputy coroners. O'Neil instructed the Will County Deputy Coroners to call Alexander, and not O'Neil, with any questions regarding assigned death investigations. Alexander compiled and produced a questionnaire for coroners investigating Sudden Infant Death Syndrome, and authored and produced "Janet's Journal," a bulletin containing relevant and topical issues for deputy coroners. Alexander notes that her management of the coroner's office was so effective that no grievance was filed by any employee-member of the collective bargaining unit. She created a "log cabin" office, using her own funds, which O'Neil used in his public presentations. Compl., ¶¶ 19-30.

Alexander's own allegations demonstrate that she had meaningful input into deciding how to implement and effectuate the policies and goals of the Coroner's office when there existed room for principled disagreement on those goals or their implementation. *Warzon*, 60 F.3d at 1239, quoting *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981). Under *Riley*, our focus in determining whether Alexander is a policymaker rests on the inherent powers of her office, not what she did. *Riley*, 425 F.3d at 360-61. Having examined both the statutory duties of her position under Illinois law and considered her own allegations, we agree with the defendants that Alexander is a policymaker under both standards.

Additionally, because the underlying concern for first amendment purposes is "elected officials' ability to execute their policies–to which the polity provided its imprimatur on election

6

day–without the hindrance of political antagonists doing their bidding," we also must examine whether there was a political motivation behind Alexander's firing. *Warzon*, 60 F.3d at 1238. Alexander claims there was not, and that she was fired for speaking out about a matter of public interest, the rape kits used in the Riley Fox death investigation. Again, however, we agree with defendants. In her complaint, Alexander specifically outlines the political affiliations of O'Neil, Will County's State's Attorneys. The complaint refers to "Republican Will County State's Attorney Tomczak" and "Democrat James Glasgow." Compl., ¶¶ 36-37. She states that "James Glasgow and O'Neil are political allies." *Id*. at 37. She continues, "O'Neil ordered Alexander to stop speaking to, conferring with, or socializing with . . . coroners and deputy coroners aligned with other political parties." *Id.* at 46. She indicates that "Alexander's refusal to stop associating with coroners from other counties and of other political parties angered O'Neil and he verbally abused Alexander when he discovered that she continued to confer and socialize with coroners associated with the Republican party." *Id.* at 47.

Alexander's complaint makes it evident that Alexander was a policymaking employee who was fired on what she claims are political grounds, and therefore her firing falls under the patronage exceptions carved out by the Supreme Court and the Seventh Circuit. The Seventh Circuit has held that an employee such as Alexander can be fired on political grounds without violating the First Amendment. *Warzon*, 60 F.3d at 1239. We therefore dismiss Counts I and II of the complaint because Alexander can prove no facts consistent with the allegations in her complaint that would support a finding that she was not a policymaker. *Id.*

For the foregoing reasons, Counts I and II of plaintiff Alexander's complaint are dismissed.

*Due Process*

    1. Property Interest

Count III of plaintiff's complaint alleges that defendants deprived her of a property interest in her position as Chief Deputy Coroner of Will County by firing her when O'Neil made an oral agreement with her that she would remain in her position for as long as he was Coroner of Will County. She claims that she relied on his promise to her detriment when she turned down a position with the Cook County Medical Examiner's Office. Finally, she claims that, because she was fired without cause and without adequate notice and a meaningful opportunity to be heard, defendants violated her right to due process under the Fourteenth Amendment.

State law determines whether an employee has a property right sufficient to entitle her to the rights under the Due Process Clause. *Warzon*, 60 F.3d at 1240. For government employees, property interests in employment can arise from a statute or regulation, or by contract. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005). Alexander does not allege that there is a statute or ordinance protecting her employment. Her allegation is based on O'Neil's oral promise.

Alexander's due process claim fails. Her complaint alleges that "O'Neil told Alexander that she would be retained as Chief Deputy Coroner as long as he was the elected coroner and as long as she performed her job satisfactorily." Compl., ¶ 15. Because we have found that Alexander was a policymaker and could be fired for politically disloyal conduct, and because Alexander was, by her own admission, fired for her contact with coroners and deputy coroners aligned with different political parties, it reasonably follows that O'Neil fired her because he perceived Alexander's job performance as unsatisfactory. As a policymaker, Alexander could

8

have been fired, demoted or transferred at will for political reasons. *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 758 (7th Cir. 2002). Therefore, she had no property interest in the position, and her due process claim fails.

For the foregoing reasons, Count III of plaintiff Alexander's complaint is dismissed.

2. Liberty Interest

Count IV of plaintiff's complaint alleges that defendants deprived her of her constitutionally protected liberty interests in her reputation and her ability to find employment as a medical examiner, deputy coroner or chief deputy coroner by firing her and then falsely accusing her of violating department rules, abusing the use of her cell phone and breaching fiduciary duties of good faith and trust in discharging her duties.

In order to establish a claim for the violation of a constitutionally protected liberty interest, Alexander must show that (1) she was stigmatized by the defendants' conduct, (2) the stigmatizing information was publicly disclosed and (3) she suffered a tangible loss of other employment opportunities as a result of public disclosure. *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001). Alexander has alleged that she was stigmatized by the defendants' conduct. Alexander does not, however, allege that O'Neil publicly disclosed the stigmatizing information to the public. Her complaint does not reveal to whom the statements were made, where they were made, or what exactly was publicly disclosed. Alexander does allege that O'Neil placed false memoranda about her allegedly poor job performance in her personnel file. Placing information in an employee's personnel folder, however, is not in itself a public disclosure without an allegation that the information was publicly disseminated. *RJB Properties,*

*Inc. v. Board of Educ. of City of Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006). Alexander's complaint is devoid of any information about O'Neil's public disclosure of the stigmatizing information.

Furthermore, in the Seventh Circuit, the essence of a claim of infringement of an liberty of occupation is a charge that the "circumstances of the discharge, at least if they were publically stated, had the effect of blacklisting the employee from employment in comparable jobs." *Townsend*, 256 F.3d at 670, quoting *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987). Alexander must allege that her reputation was so damaged that it would be virtually impossible for her to find new employment in her field. Alexander, however, does not allege that she applied for jobs, that she was rejected for jobs, or even that the stigmatizing information reached other employers who potentially would hire her. She fails to allege that she was effectively blacklisted from finding comparable employment.

Because Alexander does not allege that the stigmatizing information about her was publicly disclosed, nor does she allege that she was prevented from subsequent employment due to the stigmatizing information, she has failed to allege that she was denied a liberty interest without due process of law. Accordingly, Count IV of plaintiff Alexander's complaint is dismissed.

*Counts V through VII*

Having dismissed Counts I through IV of plaintiff Alexander's complaint, the court declines to exercise its supplemental jurisdiction over the remaining state claims in Counts V through VII. 28 U.S.C.A. § 1367. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir.

1999). Counts V through VII, therefore, are dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, the motion of defendants Patrick O'Neil, the Will County Coroner's Office, and Will County to dismiss [16] Janet Alexander's complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6) is granted. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Date: September 25, 2007